# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **FIFTH THIRD BANK (CHICAGO),** ) | |
| ) | |
| **Plaintiff,** ) | No. 09 C 3463 |
| ) | |
| v. ) | |
| ) | Judge Ruben Castillo |
| **DANIEL A. STOCKS and** ) | |
| **DEBRA STOCKS,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Fifth Third Bank ("the Bank") filed this suit against Daniel A. Stocks ("Mr. Stocks") and Debra Stocks ("Ms. Stocks") (collectively, "the Stocks") in which it alleges a breach of two separate guaranty agreements. (R. 8, Compl.) The Stocks subsequently filed a counterclaim in which they ask the Court for various forms of legal and equitable relief. (R. 3-4, Countercl.) Currently before the Court is the Bank's motion to dismiss the Stocks' counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 26, Pl.'s Mot.) For the reasons stated below, the motion is granted.

## BACKGROUND[1]

On June 9, 2009, the Bank filed a complaint against the Stocks alleging that on February 17, 2006, Mr. Stocks entered into a Limited Guaranty Agreement (the "West Irving Guaranty") with the Bank in which he unconditionally guaranteed payment of all obligations to the Bank

---

[1] The Court may consider the Bank's complaint in describing the allegations in the underlying action. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (affirming the district court's use of a state court complaint and stating that a district court may take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment).

incurred by the following companies: West Irving Die, Inc., West Irving Die Castings of Kentucky, LLC, West Irving Building Corp., West Irving Building Company of Kentucky, LLC, and Quality Machining & Tooling, LLC (collectively, "West Irving Borrowers"). (R. 8, Compl. ¶¶ 4, 10-11.) The Bank alleges that Mr. Stocks owned all of the capital stock in each of the West Irving Borrowers when he entered into the West Irving Guaranty. (*Id.* ¶ 10.) The Bank also claims that on March 5, 2008, the Stocks entered into a Continuing Guaranty agreement (the "G.I. Tech Guaranty") under which they unconditionally guaranteed payment of the G.I. Tech Group, LLC's ("G.I. Tech") obligations to the Bank. (*Id.* ¶¶ 6, 18.) The Bank alleges that the Stocks were members of G.I. Tech at the time of this purported agreement. (*Id.* ¶ 17.)

According to the complaint, both the West Irving Borrowers and G.I. Tech defaulted on their debts to the Bank. (*See id.* ¶¶ 13, 20.) The Bank alleges that the Stocks breached the West Irving Guaranty and the G.I. Tech Guaranty by failing to pay the obligations they assumed under both agreements. (*Id.* ¶¶ 13-15, 20-22.) As a result of these alleged breaches, the Bank claims to have suffered damages totaling approximately $9.5 million. (*See id.* at ¶¶ 16, 23.)

On July 14, 2009, the Stocks filed a counterclaim alleging that the Bank has "engaged in such actions and activities as to take over and be responsible for all cash flow, money management, and cash activity" of the West Irving Borrowers and G.I. Tech (collectively, the "Companies"). (R. 22, Defs.' Countercl. at ¶ 1.) The Stocks claim that as a result of the Bank's actions, the Companies lost vendors and were unable to manage their cash flow. (*Id.* at ¶ 1(a).) Further, the Stocks allege that the Bank required them to make investments in the Bank's investment group which, according to them, further impaired their ability to manage their cash flow and meet debt obligations. (*Id.* ¶ 1(b).) Additionally, they aver that the Bank returned some

2

company checks "after first zeroing out the individual company accounts and then approving other checks as it deemed fit and taking payments for the Bank prior to their due dates, rather than what was deemed necessary by the owner and officers of the Companies." (*Id.* ¶ 1(c).) Finally, the Stocks allege that they turned over the West Irving Borrowers to a trustee for an assignment of benefits to creditors on the understanding that upon the sale of assets, the Bank would not seek a deficiency against Mr. Stocks. (*Id.* ¶ 1(d).) The Stocks allege that the trustee selected by the Bank refused offers to purchase assets at fair market value and, in general, was working against their best interest. (*Id.* ¶¶ 1(f)-(g).)

As a result of these alleged injuries, the Stocks claim that the Bank is either estopped from asserting or has waived any deficiency claim. (*Id.* ¶ 2.) In addition to this remedy, the Stocks ask the Court to dismiss the Bank's complaint and award them compensatory and punitive damages. (*Id.* ¶ 4.)

On July 30, 2009, the Bank filed a motion to dismiss the Stocks' counterclaim. (R. 26, Pl.'s Mot.) In support of their motion, the Bank makes two central arguments. (*See id.*) First, it argues that the Stocks cannot recover the alleged losses suffered by the Companies as a matter of law. (R. 26-1, Pl.'s Mem at 3-7.) Second, the Bank contends that the Stocks are not real parties in interest as defined by Federal Rule of Civil Procedure 17(a) and are therefore not the proper parties to prosecute the counterclaim. (*Id.* at 7-8.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a pleading. *See Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). A court uses the same standard of review that applies to claims in the main complaint in evaluating a motion to dismiss a

3

counterclaim. *See Cozzi Iron & Metal Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court assumes all well-pleaded allegations in the counterclaim to be true and draws all inferences in the light most favorable to the non-moving party. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). To survive a motion to dismiss, the counterclaim must overcome "two easy-to-clear hurdles": (1) it must describe the claim in sufficient detail to give the opposing party fair notice of what the claim is and the grounds on which it rests; and (2) its allegations must actually *suggest* that the counterclaimant has a right to relief, by providing allegations that raise a right to relief above the speculative level. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis in original).

## ANALYSIS

The Bank contends that "the Stocks have failed to state any valid claim to recover losses allegedly incurred by the West Irving Borrowers and GI Tech." (R. 26-1, Pl.'s Mem at 3.) Thus, as a threshold matter, the Court must determine the legal basis of the Stocks' counterclaim.

All that is required to state a claim in a complaint filed in a federal court is a short statement, in plain English, of the legal claim. Fed. R. Civ. P. 8(a)(2); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). Indeed, Rule 8 does not require parties to plead facts or legal theories. *See Kirksey*, 168 F.3d at 1041. This rule simply "specifies the conditions of formal adequacy of a pleading." *Id.* It does not, however, "specify the conditions of its substantive adequacy, that is, its legal merit." *Id.* When faced with a motion to dismiss, "the non-moving party must proffer some legal basis to support his cause of action." *County of*

*McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) (citing *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995)). Although the complaint itself "need not specifically or correctly identify the legal basis for any claim, in response to a motion to dismiss that raises issues as to a claim, the [claimant] must identify the legal basis for the claim and make adequate legal arguments in support of it." *Berry v. Illinois Dep't of Human Servs.*, No. 00 C 5538, 2001 WL 111035, at *7 (N.D. Ill. Feb. 2, 2001) (citations omitted).

In response to the Bank's motion, the Stocks devote their entire brief to arguing that they are the proper party to bring the counterclaims. (*See* R. 30-1, Defs.' Mem. at 1-3.) They fail however, to give adequate attention to the logically antecedent question: what exactly is the legal basis for their counterclaims? While they seem to suggest that their counterclaims are predicated on an alleged breach of fiduciary duty and fraud in the inducement, (R. 30, Defs.' Resp. at 2), they fail to provide any legal argument indicating how the factual allegations in the complaint constitute plausible legal claims.

The Stocks do not provide any legal basis for their breach of fiduciary duty counterclaim. (*See* R. 30-1, Defs.' Mem. 1-3.) Aside from an isolated and conclusory reference to a breach of fiduciary duty made in their response, (*See* R. 30, Defs.' Resp. at 2), they do not mention how the factual allegations in their complaint translate into a legally cognizable claim. Without establishing a legal basis for their counterclaim, the Court cannot determine whether the Stocks have stated "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While the allegations in the counterclaim may fit into the invoked legal category, the Stocks fail to provide legal support for the Court to conclude that their allegations of wrongdoing constitute plausible

claims for relief under a breach of fiduciary duty theory.[2] Accordingly, the Court finds that they have failed to state a claim for breach of fiduciary duty.

Additionally, although the Stocks indicate they have "properly asserted claims for . . . fraud in the inducement," (R. 30, Defs.' Resp. at 2), they fail to satisfy Rule 9(b)'s requirement of stating "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Rule 9(b), the Stocks are required to plead the "identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the [claimant]." *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008) (citations and quotation omitted). The Court finds that the Stock's fraud in the inducement counterclaim fails to satisfy this requirement, and thus fails to state a claim.

## CONCLUSION

For the reasons stated above the Bank's motion to dismiss the counterclaim (R. 26) is GRANTED.

Entered: _____

Judge Ruben Castillo
United States District Court

Dated: March 2, 2010

---

[2] The Stocks' conclusory assertion that they have "properly asserted claims for breach of fiduciary duty," (R. 30, Defs.' Resp. at 2), is not enough to help their counterclaim survive a 12(b)(6) motion to dismiss. *See County of McHenry*, 438 F.3d at 818 (stating that a district court is not "obliged to accept as true legal conclusions") (citation omitted).