MHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIFTH THIRD BANK (CHICAGO), | ) |
| | ) |
| Plaintiff, | ) No. 09 C 3463 |
| | ) |
| v. | ) |
| | ) Judge Ruben Castillo |
| DANIEL A. STOCKS and | ) |
| DEBRA STOCKS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Fifth Third Bank ("Plaintiff") filed this complaint against Daniel A. Stocks ("Mr. Stocks") and Debra Stocks ("Ms. Stocks") (collectively, "Defendants") alleging breaches of two separate guaranty agreements. (R. 8, Compl.) Currently before the Court are Plaintiff's motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). (R. 33; R. 38.) For the reasons stated below, the motions are denied.

### RELEVANT FACTS[1]

As of February 17, 2006, Mr. Stocks owned all of the capital stock of West Irving Die, Inc., West Irving Die Castings of Kentucky, LLC, West Irving Building Corp., West Irving Building Company of Kentucky, LLC, and Quality Machining & Tooling, LLC (collectively, "the "West Irving Companies"). (R. 40, Pl.'s Count I Facts ¶ 8.) In 2006, Mr. Stocks entered into a limited guaranty agreement (the "West Irving Guaranty"), under which he "unconditionally

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 Statements. (R. 40, Pl.'s Count I Facts; R. 36, Pl.'s Count II Facts; R. 47, Defs.' Resp. Facts; R. 59, Pl.'s Reply Facts.)

guaranteed payment of all obligations of the West Irving Companies" to Plaintiff. (*Id.* ¶ 9.) Subsequently, Plaintiff made loans to the West Irving Companies (the "West Irving Obligations").[2] (*Id.* ¶¶ 9-10.)

Further, in 2008, Defendants were members of G.I. Tech Group LLC ("G.I. Tech"). (R. 36, Pl.'s Count II Facts ¶ 8.) Defendants "unconditionally guaranteed payment of all obligations" of G.I. Tech to Plaintiff in consideration for terms and conditions set forth in a guaranty agreement (the "G.I. Tech Guaranty"). (*Id.* ¶ 9.) Beginning in March 2008, Plaintiff made loans to G.I. Tech (the "G.I. Tech Obligations").[3] (*Id.* ¶ 10.)

Both the West Irving Obligations and the G.I. Obligations are in default. (R. 40, Pl.'s Count I Facts ¶ 16; R. 36, Pl.'s Count II Facts ¶ 17.) Plaintiff claims that subsequent to these defaults, Defendants' obligations were triggered under the West Irving Guaranty and the G.I. Tech Guaranty (the "Guaranties"). (R. 40, Pl.'s Count I Facts ¶ 18; R. 36, Pl.'s Count II Facts ¶ 17.) Plaintiff alleges that Mr. Stocks has failed to pay monies due and owing under the West Irving Guaranty, and as a result of his breach it has suffered damages, as of October 5, 2009, in the amount of $2,200,000.00, plus interest. (R. 40, Pl.'s Count I Facts ¶¶ 18-19.) Further, Plaintiff alleges that Defendants have failed to pay monies due and owing under the G.I. Tech

---

[2] Two of the loans are described in Omnibus Reaffirmation Agreements, dated April 23, 2007 and February 17, 2008. (*Id.* ¶ 10.) Both agreements state that "Collateral Agreements," defined to include the West Irving Guaranty, "constitute binding and valid obligations of each of the undersigned parties, and none of them have any set off, counterclaim or defense with respect to any of the Obligations described . . . ." (*Id.* ¶¶ 12-13.)

[3] On January 31, 2009, Mr. Stocks executed a Reaffirmation of Agreements ("Reaffirmation"), under which G.I. Tech and Mr. Stocks agreed that the G.I. Tech Obligations and G.I. Tech Guaranty "remain in full force and effect, are ratified and confirmed, and extend to cover all Obligations," and that "[a]ll of our obligations to Lender are owed without setoff, defense, counterclaim, or recoupment." (*Id.* ¶ 12.)

Guaranty, and that as of September 24, 2009, Defendants owe $1,082,577.30, plus collection costs. (R. 36, Pl.'s Count II Facts ¶¶ 17-18.)

Defendants "admit" that the West Irving and G.I. Tech Obligations have not been paid. (R. 47, Defs.' Resp. Facts, Count I ¶¶ 16, 18 & Count II ¶ 17.) However, Defendants argue "that any resulting damage to [] Plaintiff is the result of Plaintiff's own actions," and deny that any monies are due under either of the Guaranties. (*Id.* at Count I ¶¶ 16, 18-19 & Count II ¶ 17.)

## PROCEDURAL HISTORY

On June 8, 2009, Plaintiff filed a two-count complaint alleging that Defendants breached the Guaranties. (R. 1, Compl.) On July 14, 2009, Defendants filed a counterclaim alleging that Plaintiff was estopped from seeking any deficiency or waived such deficiency through its actions. (R. 22, Defs.' Countercl.) The counterclaim also asked the Court to dismiss Plaintiff's complaint and award Defendants compensatory and punitive damages. (*Id.* ¶ 4.) On July 30, 2009, Plaintiff moved to dismiss Defendants' counterclaim. (R. 26, Pl.'s Mot.) This Court granted Plaintiff's motion on March 2, 2010, concluding that the counterclaim failed to state a claim. *See Fifth Third Bank (Chicago) v. Stocks*, 265 F.R.D. 316 (N.D. Ill. 2010).

On September 30, 2009, Plaintiff moved for summary judgment on Count II of the complaint. (R. 33, Pl.'s Count II Summ. J. Mot.) Shortly thereafter, on October 8, 2009, Plaintiff also moved for summary judgment on Count I. (R. 38, Pl.'s Count I Summ. J. Mot.)

## LEGAL STANDARDS

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A disputed fact is 'material' if

it might affect the outcome of the suit under the governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In ruling on a motion for summary judgment, the Court must consider the facts in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all doubts in favor of that party. *Keri v. Bd. of Trsts. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Once a moving party has met this burden, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The non-moving party must show that there is evidence upon which a jury reasonably could find for [it]." *Wheeler*, 539 F.3d at 634.

## ANALYSIS[4]

To establish a prima facie case for enforcement of a guaranty under Illinois law, the plaintiff must "enter[] proof of the original indebtedness, the debtor's default, and the guarantee." *Gen. Elec. Bus. Fin. Servs., Inc. v. Silverman*, No. 09C0364, 2010 U.S. Dist. Lexis 11622, at *6 (N.D. Ill. Feb. 10, 2010) (quoting *Mid-City Indus. Supply Co. v. Horwitz*, 476 N.E.2d 1271, 1277 (Ill. App. Ct. 1985)). In this case, Plaintiff has produced evidence establishing a prima facie case for the enforcement of the Guaranties. (*See* R. 40, Pl.'s Count I Facts ¶¶ 9, 16, Ex. A; R. 36, Pl.'s Count II Facts ¶¶ 8, 9, 17-18, Ex. B; R. 47, Defs.' Resp. Facts, Count I ¶¶ 16, 18 & Count II ¶ 17.) Defendants do not contest this evidence; but instead, assert three arguments in opposition

---

[4] The Guaranties state that they shall be governed by Illinois law. (R. 40, Pl.'s Count I Facts, Ex. A, West Irving Guaranty § 5.8; R. 36, Pl.'s Count II Facts, Ex. B, G.I. Tech Guaranty § 13.) Moreover, neither party disputes that Illinois law is applicable. (*See* R. 39, Pl.'s Count I Mem. at 5; R. 34, Pl.'s Count II Mem. at 4; R. 58, Defs.' Resp. at 5-11.)

4

to Plaintiff's motion for summary judgment: (1) "Plaintiff's fraud vitiates all transactions it touches," (2) "Plaintiff breached its duty of good faith and fair dealing," and (3) "Plaintiff breached its fiduciary duty to Defendants." (R. 58, Defs.' Resp. at 5-12.)

To begin, the Court finds that based on the clear and unambiguous language of the Guaranties, Defendants' payment obligations under the Guaranties were triggered. (*See* R. 40, Pl.'s Count I Facts ¶¶ 9, 16, Ex. A; R. 36, Pl.'s Count II Facts ¶¶ 8, 9, 17-18, Ex. B; R. 47, Defs.' Resp. Facts, Count I ¶¶ 16, 18 & Count II ¶ 17.) Plaintiff contends that once this determination has been made, Defendants' arguments are of no consequence, because "the plain terms of the guaranty agreements" "waive any right to use offset arguments against [its] claims." (R. 60, Pl.'s Reply at 3-4.) In Plaintiff's view, the Guaranties "obligated" Defendants "to pay regardless of what actions [it] may have taken." (*Id.* at 12.)

Under Illinois law, "a guaranty is a legally enforceable contract that must be construed according to its terms, so long as they are clear and unambiguous." *FDIC v. Rayman*, 117 F.3d 994, 998-99 (7th Cir. 1997). This is true even when the guaranty "contains broad statements of guarantor liability, including waivers of all defenses." *Gen. Elec. Bus. Fin. Servs.*, 2010 U.S. Dist. Lexis 11622, at *9 (citing *Chemical Bank v. Paul*, 614 N.E.2d 436, 441 (Ill. App. Ct. 1993)); *see also Bank of Am., N.A. v. 108 N. State Retail LLC*, No. 1-09-3523, 2010 Ill. Appt. LEXIS 271, at *30-31 (Ill. App. Ct. Mar. 31, 2010) ("a decision by a party to contractually agree to waive all defenses is permitted under Illinois law"). There is, however, one exception to this rule. *Gen. Elec. Bus. Fin. Servs.*, 2010 U.S. Dist. Lexis 11622, at *9 (citing *Chemical Bank*, 614 N.E.2d at 441). A covenant of good faith and fair dealing is implied in every contract, absent express language to the contrary, even when a guaranty waives all defenses. *Id.*; *see also Fed.*

*Nat'l Mortgage Ass'n v. Wisniewski*, No. 08C1976, 2009 U.S. Dist. LEXIS 93500, at *12 (finding a breach of the covenant of good faith and fair dealing possible even after plaintiff established a prima facie case for the enforcement of a guaranty).

"Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract." *Gore v. Ind. Ins. Co.*, 876 N.E.2d 156, 161-62 (Ill. App. Ct. 2007). The duty of good faith and fair dealing requires the party vested with discretion "to exercise it reasonably and with the proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations." *Id.* at 162. However, "an implied covenant of good faith cannot overrule or modify the express terms of a contract." *Cromeens, Holloman, Siber, Inc., v. A.B. Volvo*, 349 F.3d 376, 396 (7th Cir. 2003) (citing *Northern Trust Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995)).

Defendants argue that Plaintiff "was granted considerable discretion" under the parties' agreements, but did not "exercise good faith and fair dealing." (R. 58, Defs.' Resp. at 9.) In support of their argument Defendants point to Mr. Stocks' affidavit, where he states that Plaintiff "required" the West Irving Companies to make certain purchases and to hire two consulting firms.[5] (*Id.*, Ex. 1, Mr. Stocks Aff. ¶¶ 8, 9, 16.) Further, Mr. Stocks states that Plaintiff was "in charge" of the cash flow of the West Irving Companies and "would refuse to honor checks made to pay the debts of the company," and withdrew its loan payments "several weeks in advance of the payment due date." (*Id.* ¶¶ 10, 13, 16.) Mr. Stocks also states that Plaintiff failed to fund G.I.

---

[5] Mr. Stocks states, "I did not have a choice as to which consulting group to hire or whether to hire a consulting group." (R. 58, Defs.' Resp., Ex. 1, Mr. Stocks Aff. ¶ 9.) In addition, Mr. Stocks claims that after the consulting firm was hired, the consulting personnel supported his position that the West Irving Companies consolidate to one facility, but Plaintiff refused to support the move. (*Id.* at ¶ 11.)

Tech as it had agreed and refused to allow the West Irving Companies to pay past due invoices to G.I. Tech "even when funds were available." (*Id.* ¶¶ 14, 19.) Mr. Stocks asserts that if those invoices had been paid, G.I. Tech would have been able to meet its loan obligations to Plaintiff. (*Id.* ¶ 19.)

Plaintiff, on the other hand, tells a different story. Gregory Bork ("Bork"), a Vice President employed by Plaintiff submitted a declaration in which he asserts that Plaintiff "was not in charge of any aspect of running the West Irving Companies" and that the parties "did not have any relationship [] other than as lender-borrower." (R. 59, Pl.'s Reply Facts, Ex. A, Bork Decl. ¶¶ 5, 7.) Bork states that Plaintiff did not "require" Defendants to make any purchases or hire any consulting firm, but Defendants made these decisions "voluntarily." (*Id.* ¶¶ 3, 4, 6.) However, Bork does concede that Plaintiff "suggested" that Defendants "consider hiring a consultant" and "suggested" three possible consulting firm options. (*Id.* ¶ 12.) Bork also states that Plaintiff did not "refuse to honor checks" and that Defendants checking accounts "had negative balances throughout this period." (*Id.* ¶ 13.)

The Court finds that the parties' contrasting statements create material issues of fact. *See Hampton*, 561 F.3d at 713; *Keri*, 458 F.3d at 628. Specifically, Defendants have established a triable issue as to whether Plaintiff breached an implied covenant of good faith and fair dealing. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (determining that an affidavit constitutes admissible evidence for summary judgment purposes when an affiant who would have personal knowledge swears to the truth of the facts in the affidavit). Therefore, summary judgment is not appropriate and Plaintiff's motions are denied.[6]

---

[6] The Court need not address Defendants' additional arguments that Plaintiff engaged in fraud and breached its fiduciary duty. (*See* R. 58, Defs.' Resp. at 5-9, 11-12.)

## CONCLUSION

For the reasons stated above Plaintiff's motions for summary judgment (R. 33; R. 38) are DENIED. The parties are directed to reevaluate their settlement positions in light of this opinion and exhaust all efforts to settle this case. A status hearing will be held on July 20, 2010 at 9:45 a.m. to set a litigation schedule for this case, including a firm trial date.

Entered: /s/ Ruben Castillo

**Judge Ruben Castillo**
**United States District Court**

**Dated:** July 1, 2010